Case number 13-3907 Robert Bright v. Gallia County Ohio and the Board of Commissioners of Gallia County Ohio et al. oral argument not to exceed 15 minutes per side. Mr. Gerhardt Sting for the appellant. Switch tables, but it's still me. Good morning again. So, in Gallia County, public defenders are hired through a system that involves the county recognizing its duty to provide indigent public defense. A public defender commission that the county established and the non-profit defense lawyer corporation. And these three parties enter into a contract which is attached to the complaint. And the judge is under the state system and under the contract not supposed to appoint lawyers except by referring indigent defendants to the corporation for a random appointment based on workload. In Gallia County, Judge Evans had a practice of just picking lawyers and appointing them. And he had a practice of basically telling, as we allege in the complaint, the corporation and the public defender commission and the county how defense will go forward in a case like this or in these indigent cases. And when he got into this tussle with Robert Bright and he banned him from all 70 cases pending that were indigents, then as we see in document 34-1, page number 334, Bright's doing everything he can to save his job and he learns that the judge has told the corporation that I am going to appoint non-corporation attorneys until you fire Bright. So, he's gone to the length of coercing these other defendants into getting rid of Bright permanently. Did you sue him for that? We sued all the defendants for retaliation based on Mr. Bright's protected conduct. And if you go through each element of the claim, you've got against all the defendants, you have protected conduct, you have this advocacy on issues of public concern, you have an adverse act. Mr. Bright was removed from all those cases and ultimately lost his job because of that. Because he couldn't practice in front of Judge Evans. And then you have the adverse act being motivated by the protected conduct. Where Judge Graham got it wrong in the district court and he dismissed all of the county defendants, I'll call them, is on his analysis of proximate cause. He said, oh, Mr. Bright wasn't fired because he said anything in the pleadings or did any protected conduct. He was fired because he can't work in front of Judge Evans anymore. And that's where he ends the inquiry. But in fact, looking at the allegations of the complaint, looking at the declaration at page 334, looking at the pleadings in this matter, you see that there is a plausible inference that the protected conduct was the motivating factor behind all of the defendants' actions which resulted in Mr. Bright losing his job. I assume that we agree that the proximate cause issue should be decided your way. Isn't there a problem on whether there is in fact protected conduct because of the Mesobob case? No. And I understand that the panel, as one leg of their decision, said that pleadings by a defense lawyer are not protected by the First Amendment. But your dissent in the Mesobob case and the cases you cite, Gentile and the others, really say, you know what, when lawyers do their job, that is, it's the paramount, the First Amendment. As much as I love that dissent, it was a dissent. Well, I understand, but... So how, I mean, we're bound by one panel cannot overturn another panel, and I lost that case. Yeah, but they had two legs to that argument. And one of the legs was that there was no adverse action, which you agreed with. Yeah, but so if there are two alternative bases for a Sixth Circuit opinion, you're saying we can forget about one of them? Well, I think you can look seriously at whether that one was integral to the whole thing. And it's obviously wrong. I mean, there are... What's your best case for saying that we can do what you want us to do? My best case is that if you look at all the Supreme Court cases, In re Primis, Gentile, they say that when lawyers do their advocacy, that's protected conduct. That is matters of public concern. You're saying that the panel got it wrong. The question is, on what basis do we get from under that case? Well, you are... You can't say it's wrong. You can say that that wasn't as integral to the holding as their holding... Are you saying it was dicta? Yes, because the holding, the main holding, was that there was no adverse action. How can you say that's the main holding? Did the majority in Mesbob say it was the main holding? No, you have to go back and look at it carefully. And in fact, what... Look at it carefully. What would you point us to in it that says it's... What I'd point you to is the fact that Mike Allen, who was the prosecutor in that case, all he did was make a bunch of statements about Mr. Mesobob, criticizing Mr. Mesobob as a bad lawyer on TV. What did the majority say in that case that helps you get to where you want us to get? I just don't think they chewed on the issue of whether it's First Amendment conduct as seriously as we see them deciding. I think it's dicta. I think that it's much more important to them that Mr. Mesobob didn't lose anything other than a little face in the community as the prosecutor trashed him on TV. And that's not an adverse action. I'm trying to find the case, and I know I have it here. Did the majority say, now I have it, did the majority say it's more important to us, or more importantly, or anything like that? I mean, because if the majority gave a hint that it wasn't focusing as much on the protected conduct, then maybe you have an argument. Well, I don't, I can't. I mean, in the beginning of the adverse action section it says, even if we were not convinced that Mesobob's advocacy is not protected, we would affirm. So it sounds like the adverse action one is actually the secondary rationale. Yeah, I see that. That sentence may, you know, I'm just wondering if there's something else. But we can look at it again. Right, and I do think that it deserves a very fresh look, and I think that the district court in this case got it right in concluding that there was protected conduct, which is why Judge Evans is appealing only on the issue of immunity. And in Judge Evans' appeal, that's not, even though that was central to the district court's denial of the motion to dismiss, they aren't up here on that. In this case, the county did raise, saying that we hadn't stated a 1983 claim. But if ever there was protected conduct, an attorney advocating for the rules of the court and so on certainly triggers that. And I think getting back to Mesobob, I think we're being too global. I think that the court should say, let's look at the actual conduct. All speech by all lawyers in all contexts in all courtrooms, you can't say that that doesn't have any First Amendment rights. I think what they're really saying here is the type of speech here where Mr. Mesobob was alleging in his pleadings that Mike Allen, the prosecutor, was doing something wrong, that in that context the court uses the phrase that this isn't First Amendment protected conduct. But in fact, all lawyer speech in the courtroom is protected. It's just a matter of what kind of balancing you're going to do. It's heavily regulated, which is the better way to look at this. Some speech right in front of a judge to a judge's face is as heavily regulated as you're going to get. You can go to jail if you say the wrong thing or if you say it in the wrong way. And we understand that. That doesn't mean there's no First Amendment protection. It just means that the government interest in respecting a judge, respecting the decorum of the court, in honoring the majesty of the court is greater than a lawyer's whim at yakking. So I think in each of these contexts we should look at the balancing that you would normally look at in a First Amendment case. And here, this type of speech is also regulated. It's protected conduct, but it's regulated. And had Mr. Bright said disrespectful things, there would have been a way to address that without violating the Constitution. But here, this is a classic retaliation case. And it does remind me of some of the prisoner cases that generated a lot of the jurisprudence on retaliation in the circuit. Thaddeus X, King. Those are cases about advocacy, about filing cases and filing grievances and filing pleadings. And in those cases, the court accepts that that's protected conduct, which is what Mr. Bright was doing. And in those cases, the court accepts that if you put a guy in solitary or transfer him to a higher security prison because he's asserted the First Amendment rights of himself and his brother inmates, that's an adverse action. And in those cases, the court has even gone on to look at whether, in fact, when you have multiple defendants, as we do here, a defendant can be liable if he sees that if he implements the orders of another, it will violate the rights of the plaintiff. And that's what happened here. These county defendants implemented the order of Judge Evans, banned Mr. Bright from any further employment because he wasn't as useful to them, and therefore they are implementing. Therefore, if you do the last step of the First Amendment analysis, they wouldn't have done this if the Protected Act hadn't occurred. So is there any other remedy for Attorney Bright vis-a-vis getting his job back given the Ohio Supreme Court's disciplinary proceeding against Judge Evans? There is no feasible remedy that would get him full relief, that would get him his job back and or damages. Can he get his job wholly apart from damages? But can he, has he tried? I realize this is outside of the record, so you can refuse. Right. We have not filed state court actions, and there is no exhaustion requirement under 1983. And this is the type of setting where an independent forum is probably preferable. But even if there were state court remedies available, they wouldn't be for full relief. You might be able to argue something about a right to reinstatement. But, you know, a mandamus action, you have to order, the executive officer who is being compelled has to have a clear legal duty. And there may be other arguments, other defenses that have nothing to do with the protected conduct here that would make that less effective than the action we filed. I'm curious about some of the relationships. The commission contracted with a private nonprofit, right? Yes. Is that a state actor, the private nonprofit? Yeah, they're a state actor under the nexus theory, under the joint actor theory. The same theory I use when I sue a doctor who's hired by the jailer, hired by the sheriff to provide medical services in a jail. It's that type of mixing of the mission. And in those cases, I'll even argue that the doctor who's the medical director has been delegated the duty, is the final policy maker for the sheriff, because the sheriff doesn't know, isn't in a position to actually dictate the medical policies, but those policies drove the constitutional violation. Like here, the county said, all right, we've got to do public defender services, let's hire this group of criminal defense lawyers. What should the county have done? Sort of told the public defender you're out? Yes. Told the public defender you're out, told hold on to Bright, let him do the misdemeanor cases, let's file a prohibition, a writ of prohibition. Oh, yeah. I mean, there's, that's why we need to go back and do our discovery and have our, there's a lot of facts. What do you say happened behind the scenes? Judge Evans just got his way. He said, I don't want to be dealing with this lawyer, and everybody folded. Even those who went to the chambers and said, you know, wait a minute, you know, don't you think this is an overreaction? Mr. Bright sent apologies. He said, can I redo that motion? I want to do a do-over. None of it worked. And Judge Evans just told, literally, and this is in the record at 34-1, Judge Evans told the representative of the Criminal Defense Lawyer Corporation, I am not going to appoint corporation lawyers, I'm going to keep appointing people outside the panel, which is like double the cost because you've got these others on salary, until you fire Bright. So that's... Again, why, that's not a judicial act. No, that's not a judicial act. So how come that claim didn't go forward? Well, that's part of the evidence in the case, and that would be another way to frame the claim against, you could focus on that alone and frame that as the case against these defendants. It's in the record, though, and ultimately the coercion of these other defendants, we still have to prove it up, we have to do discovery, and I'm not going to give up the easier and clearer action in the absence of jurisdiction argument and the protected conduct argument because of the evidence we're also developing on this other thing. But isn't that a more, the statement you just made in response to Judge White's question, isn't that a more concrete example of an absence of jurisdiction than what you have previously argued, which is entering this order and all 79 cases and depriving him of the opportunity to represent these clients based on his speech? Right, it is, but I'm a trial lawyer and I may not be able to prove that up as clearly as I've got it in my pre-trial investigation right now, and if I can prove it up, yes, we have a double way to argue absence of jurisdiction, but right now it's hearsay, it's reliable hearsay, but it's still hearsay. I want it in a deposition, you know, and we're going to have to work up all the facts in order to come to a... Is this a motion to dismiss on the pleadings or is this summary judgment in front of us? This is a motion to dismiss. This is a Nickball motion, so, you know, these are plausible results and we should go back and work all this up. You've got enough... Did you allege in the, and I realize this is the Evans case, but everybody's here, did you allege in the Evans case that Evans said to fire Bright? No, we didn't have that. Well you did because... Well we do, yes, wait a minute, hold on. This is all one case, so that was filed in response to a motion for lack of subject matter jurisdiction by the corporation. So that's when we got that evidence and put it in, but it could apply to all the defendants, and you're free to look at the entire record as you look at this. But, you know, I am, as I say, a trial lawyer at the very beginning of a complicated set of relationships where they're all in a club and we're knocking on the door, and I am not going to hang this case on one very interesting and compelling statement, but that can't be the only basis for suing these defendants when we know that a judge who issues an order identical in 69 cases, that that's just not the same as an individualized order based on individualized conduct. So as far as Evans goes, and I know we're not doing that case... But you feel you have evidence that the corporation tried to intervene in Mr. Bright's behalf and was shut down by the judge? I feel I have evidence that the corporation made an inquiry, asked for some accommodation, and was told you're not going to get it. Okay, and you're alleging that the corporation and the commission had a duty not to give in? Right. I'm saying that this is just like any other joint actor, where you know that the underlying trigger for this negative action is protected conduct. You would have never fired Mr. Bright if this hadn't come up, and now you're firing him because he spoke up and he's being retaliated against. You are a joint participant in the constitutional violation. Thank you. May it please the Court, Your Honors, my name is Dan Downey, and I'm here on behalf of the Gallia County Board of Commissioners and the Gallia County Public Defenders Commission. And I would like to begin this argument by noting that we are here based upon a motion to dismiss a First Amendment complaint. And the First Amendment complaint contains very limited allegations with respect to my clients, the Board of Commissioners and the public commission that was established by them pursuant to the revised code. In reality, these entities are political actors under the revised code that serve as a funding mechanism to supply the residents of Gallia County with indigent legal counsel. Although not attached to the initial complaint, it was attached to a motion to dismiss, which was the contract that spells out the duties and obligations between the commission and the corporation that in fact hired Mr. Bright as an independent contractor. Are you representing the corporation? I do not, Your Honor. The corporation had separate counsel at the lower court level, filed a motion to dismiss, which was granted and has not made an appearance in this appeal. I would like to note that they are separate entities. There's a contract in place between my clients and the corporation. The corporation, as noted earlier, is a nonprofit private entity that simply supplies the residents of Gallia County with indigent counsel. They also comply with various guidelines enforced through the public defender of the state of Ohio to report active cases and things of that nature. They are audited on how they spend funds. But my client, the commissioners and the commission itself, we simply fund this entity. Every year a contract is entered into. For the year at issue, I think $291,000 was paid in monthly installments, as noted in the contract, to provide this service to the residents of Gallia County. So just let me ask you this question. Are you taking the position that you're not making any representations regarding the county's involvement in any of this? You're solely defending on the First Amendment issue? I'm defending the county and the Public Defender's Commission, which are the two. No, no, I know who your client is. I'm asking what your position is on this appeal. I'm asking whether the only issue that you are basically conceding all issues except for the First Amendment issue, or are you also asserting that your client was too far removed or something like that? No, Your Honor. I am here today to argue the entire case because the allegations made at the lower court level are that my two clients, as removed as they are from the process and from Judge Evans, played some role in the alleged constitutional deprivation of rights of Mr. Bright. Judge Graham, when he issued the decision regarding my clients, noted that he had already ruled that there was no underlying constitutional deprivation of rights in the decision issued with respect to the corporation, which is a separate entity with separate legal counsel. But for purposes of today, on behalf of my clients, we're arguing that, one, there was no underlying constitutional deprivation of rights. Two, there's no responsibility, duty, obligation on the part of the commissioners or the commission to intervene in what was a matter between Judge Evans and the corporation. But there hasn't been any discovery on what might have transpired between the corporation and the commission. That is correct, Your Honor. And the reason that we are here is because, in my view and in the view of Judge Graham at the lower court level, plaintiff has not set forth any allegations that present a plausible constitutional deprivation by Mr. Bright or that there could be any relationship between what Mr. Bright went through with Judge Evans and my clients. As an initial proposition, I would note that the way county government works in general is commissioners are there to provide funds to various other entities and organizations that carry out these responsibilities in the revised code. They do not oversee, for instance, Judge Evans. The court has heard a considerable amount of commentary today regarding what Mr. Bright's rights were vis-a-vis the bar in the state of Ohio. And I would submit to this court that the county commissioners or a public defender commission that I represent would have absolutely no duty or obligation to intervene in a dispute between two lawyers. I understand that the county might be solely the funding entity, but the public defender commission has to have a slightly different role. So give me the best case for why the public defender commission should be so removed as not to be considered as playing any role in this. Certainly, Your Honor. What I would suggest is to look at the contract in place between the commission and the corporation. Under the revised code, it is permissible for the county, their requirement is to set up a commission or provide public defender services to indigents. In Gallia County, they went through the process of creating this commission, which in turn contracted with a separate organization, which is perfectly permissible in the revised code, to provide the services to those individuals who required it. And the contract is quite specific with respect to what are the duties and obligations of the parties. The commission and the commissioners simply provide funding. Either party can terminate the contract within 30 days' notice. But as far as employees, subcontractors, who they hire, who they fire, that is strictly the province of the corporation. So the corporation made determinations as to who to retain. They chose Mr. Bright, as Mr. Gerstein noted, three months prior to the incident involving Judge Evans. They decide what people are paid, how they're directed, if they are at all by the corporation, things of that nature. So the reality is the commission and the commissioners had absolutely no oversight and control of Mr. Bright or the corporation in how they carried about their daily tasks. What did the complaint allege vis-à-vis your two clients? Well, the complaint alleged that they were arbitrary in their actions, that they failed to move forward and intervene on behalf of Mr. Bright when Judge Evans sought to remove him from all those criminal cases. And the reality is, and Mr. Gerstein may mention it's a small county with 30,000 residents and everybody knows what's going on, but the complaint doesn't even allege that my clients knew what was happening at the time, that knew Mr. Bright was having this issue with Judge Evans or how they went about resolving it. Frankly, there is absolutely no logical tie to my clients and what ultimately occurred, setting aside whether or not a constitutional deprivation occurred, because Judge Graham was quite clear in noting in his decision that there simply wasn't retaliation in this case because the corporation was presented with a situation where they had to provide legal services to indigent residents and the only judge in Gallia County said he didn't want to have cases with Mr. Bright. So that was the reason, pursuant to Mr. Bright's own statement in the amended complaint, for his termination. And that's a rational reason for termination. Now, I would note to the court that earlier you were advised of the Supreme Court decision involving Judge Evans and there is a dissent by Justice Feiffer where he notes that Mr. Bright was an at-will employee of the corporation. And I would submit to the court that if discovery were to move forward, that's what would be ascertained. But at this stage in the process, and certainly Mr. Bright, being a lawyer, is well aware of ways to develop discovery and information to pursue cases through either a 34D petition under Ohio law or a public records request. And I would submit to the court that the threadbare allegations contained in the complaint and in the First Amendment complaint really don't give rise to any sort of constitutional claim by this gentleman against my clients. If you have a municipal body that has a statutory requirement to provide certain services and they contract it out and they are informed that the company with whom they contracted has just fired all the African-Americans and women because, for whatever reason, is the county not responsible? What I would suggest, Your Honor, is, and this contract has a clause that you will follow all laws with respect to discrimination, etc. But what I would state to the court is the county, they would not be a county employee. It would not be the county exercising oversight over that particular agency. However, the county does have the right to terminate a contract if they believe one of their subcontractors is doing it improperly. They don't. Under the state system, the county has the obligation to provide a certain service. And they contract with a company to provide the service and the company is violating the rights of the employees. Or let's say a judge says, look, I don't want any female clerks in my courtroom. And there's only one judge. Can the employing agency, whether it's the clerk's office or the county, can they fire the woman? Because it's not, they have no use for her if the judge won't take her in the courtroom. They don't agree, but what are they supposed to do? Well, I understand your position, Your Honor, your question. And with the clerk of courts, that would be a county employee. That would be somebody that worked for the particular county. And county policies would come into play. And arguably, immunities would attach to county involvement, et cetera. But take the first hypo of Judge White, which is that Judge Evans says he doesn't want to have any public defenders who are African American or female. And the attorney involved is a female African American. And the public defender corporation, who's not here today for whatever reason, fires that lawyer. Well, Your Honor, I do think that is a different situation than the one that we're confronting. So how would we resolve the hypo? Well, I think that if... We should let the case go forward, right, against your clients. If it was a board of county commissioners and a commissioner set up here, exercising no oversight over that third party, I would disagree that the case should move forward. But I certainly... They could continue to provide funding to the corporation that was acting in a discriminatory fashion. I can say to Your Honor that I would be shocked if any public entity, and I represent many of them, would sign off on such a policy. What I do know is... In some ways, could they legitimately continue to provide funding? Your Honor, I don't believe in those circumstances that they would provide funding moving forward. And I think that if you took race at being a protected class, that that would be a different situation. Okay, but now you're arguing the First Amendment issue. Now you're saying that would be a violation, but this isn't because there was no First Amendment violation. But trying to separate out the question whether there's a constitutional violation from the question of whether your client is potentially responsible, let's take a case where there is a violation and ask you, would your client be responsible if they did nothing about it and simply said, sorry? Well, Your Honor, I think in the hypothetical that you provide, certainly race, gender would be protected classes. So I think that's different than what we have in the case at hand with the commission and the commissioners. And we haven't even gotten to the point that, you know, how could the commissioner or the commissioners be the driving force behind Judge Evans' conduct, which ultimately led to the termination by the corporation? But in this hypothetical, they're not the driving force either. It's Judge Evans who said, I don't want them in my courtroom. Yes, I understand your hypothetical, Your Honor. In my view, that it would be distinguished because it would be a protected class, as opposed to in this instance, which is not. But the greater issue that I would look to would be how you would tie the county and the commission, as distant as they are from this situation, to any legal obligation to Mr. Bright vis-à-vis Judge Evans' conduct. What the plaintiff has alleged in this complaint is that somehow my clients, who are not even alleged to have known what occurred, had some duty or obligation to me. Well, let's make it really simple. Let's say what Judge Bright did was say that instead of, I'm sorry, Judge Evans, instead of it being Mr. Bright, it's a black woman. And what he did was say, I'm sorry, you can't practice in my courtroom. He goes to the corporation and says, find another lawyer. And until you do, I'm not appointing anybody. I mean, I'm appointing outside counsel. And they throw up their hands and go, boy, is this guy a nutcase? But, you know, we can't afford to have an extra person around here. They're fired. You know about it. I mean, is there liability or not? Sure. I don't believe there would be liability for the commission or the commissioners. But I also think that is a different situation than one that we have right now. Well, we know it's a different situation. Thankfully, a different situation. So you don't think they could be responsible? I don't believe so, Your Honor. Even though they've discharged their statutory duty to provide indigent counsel in a manner that infringed the lawyer's constitutional rights? I think that if you went through the next step, Your Honor, that when you take the commission and the commissioners and what their role is, they're not exerting oversight and control over an agency. Now, I do believe that they had the right to terminate a contract, and I think that they would. I think that the hypothetical itself would never fly in Gowdy County or anywhere else in Ohio where I go. I certainly hope it did. Why did the commission form or deal with a separate corporation here? I'm not totally certain of that, Your Honor. I know that they have guidelines in the revised code that permit them to do that. Plaintiff's counsel has noted that they should not be able to skirt their liability issues by creating a private nonprofit that comes in and takes care of these services. The reality is counties and governments subcontract out work all the time. Mr. Gerstein used an example of nurses that he may sue, and he sues them on the basis of a connection to the county. The reality is a privately paid nurse who subcontracts isn't entitled to the same immunities that a county employee is, and I would say that this situation is the same. They're not county employees. They're not required to provide them with county benefits, things of that nature. Did the commission create this nonprofit? I'm not certain of that. I may have misspoken, Your Honor. I think that the commission was contracted with the corporation. I'm not certain as to how they were created. Thank you. Thank you. Very briefly. Judge White, your analogy is excellent. We did draw that out in our brief as well, because we don't see the distinction between the protected conduct of Mr. Bright and Judge Evans' reaction and then Judge Evans saying, I'm not going to let black or women lawyers practice in front of me and then everybody else accommodating that. To us, that is an important analogy. It starts, though, with accepting that this was protected conduct, which is the Mezabov case, and in the paragraph, this last sentence of which you cited, Judge Moore, the court makes it pretty clear that the only reason Mezabov was not engaged in free expression was that the sole reason was to vindicate his client's rights. An attorney retains no personal First Amendment rights when representing his client in those proceedings. So that's why we didn't sue over the Gleason removal. But it is a totally different matter, because Bright was advocating beyond Gleason. He's saying you have a drop-dead rule, you won't take Alfred, please, you won't accommodate suspects who want to plead past your drop-dead. You know, he was doing an advocacy beyond his client, and in that sense his conduct is clearly protected, even if you're trying to honor the majority decision in Mezabov. And to respond to something that my colleague stated, the complaint clearly says that all the defendants singled out the plaintiff in retaliation for exercising his freedom of speech. It's at page 145 in the record, paragraph 42, and that's after you see the litany of acts that everyone did to get to this point. Does the complaint meet the Iqbal standard of giving some indication of the commission and the commissioners as opposed to the corporation? Yes, because the Iqbal standard is a plausible that everybody's on the hook, and to be glib. And what we did, as much as we knew, is we attached the complaint, which has everyone signing, every one of these defendants except Judge Evans, signed the contract, and that contract has lots of different duties. And we also made allegations in the complaint about how it really operated, about how Judge Evans actually did things that these other parties all accommodated because he was not honoring the system the way it was set up. And therefore it's plausible that in addition to honoring the other abuses, they're going to honor his discriminatory abuse of Mr. Bright. And that's why paragraph 42, which alleges in conclusion that the defendants all singled Bright out, it flows appropriately from the other factual allegations, and that meets Iqbal. Thank you. Thank you. Those for your argument, the case will be submitted.